<span style="color:red">**FILED**
**Jan 19, 2021**
**07:50 AM(CT)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**</span>



## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT NASHVILLE

| | | |
|---|---|---|
| **STEFANIE WILLIAMS,** | ) | **Docket No. 2019-06-1190** |
| **Employee,** | ) | |
| **v.** | ) | |
| **LIFEPOINT HOSPITALS, INC.,** | ) | **State File No. 11616-2018** |
| **Employer,** | ) | |
| | ) | |
| **SAFETY NATIONAL CASUALTY** | ) | **Judge Joshua Davis Baker** |
| **CORP.,** | ) | |
| **Carrier.** | ) | |

_____

## COMPENSATION ORDER
_____

The Court held a compensation hearing on January 7, 2021, to determine Ms. Williams's entitlement to permanent disability benefits. LifePoint argued Ms. Williams's permanent impairment came from a prior back injury. Ms. Williams claimed she incurred increased permanent impairment from the work injury despite her prior back injury. The Court holds Ms. Williams has increased permanent impairment from the work injury and that LifePoint must provide her medical and permanent partial disability benefits.

### Claim History

Ms. Williams worked as a registered nurse for LifePoint. She alleged a work-related back injury and received non-surgical treatment from panel-selected physician Dr. George Lien, who completed a Final Medical Report on September 25, 2018.

In the report, Dr. Lien assigned Ms. Williams twelve-percent "total impairment" but later testified that she either retained some permanent impairment from the work injury or none, depending on the results of a prior, non-work-related back surgery in March 2017. From Dr. Lien's perspective, the impairment attributable to the present injury depended on whether her radicular symptoms resolved between the surgery and the present injury.

Dr. Lien explained that if her radicular symptoms resolved after the prior surgery, then she had retained five-percent impairment from the work injury. He testified, "[B]efore her work injury, if I was to rate her[,] I would have given her a seven percent for having had the prior surgery already . . . [S]o even [though] the total impairment was 12 percent, the part that I thought was attributable to her work injury would only be a five percent because that was the differential." He then added, "If she had persistent radicular symptoms [from the prior surgery until this work injury] . . . if that's the case, [then] I would give her no additional impairment."

As for her surgery results, Ms. Williams testified that the surgery had resolved her radicular symptoms until this work injury. She last received treatment from the surgery some eight months before her work injury. Her husband, Nick Williams, testified she did not complain to him about, nor did he observe her exhibiting, signs she still suffered from her non-work-related injury. He only noticed she had some muscle soreness.

Ms. Williams did not return to work for LifePoint after her injury and has found no work despite applying for many jobs. She said LifePoint could not accommodate her restrictions, which forced her resignation.

Naturally, the parties have disparate interpretations of Dr. Lien's statements concerning Ms. Williams's permanent impairment. LifePoint argued that Dr. Lien's deposition testimony means that Ms. Williams retained no permanent impairment from her work injury because she experienced persistent, rather than resolved, radiculopathy after the surgery. Ms. Williams argued that the Final Medical Report accurately reflects her permanent impairment (twelve percent) and that Dr. Lien's use of the word "if" in his deposition was speculation rather than a conclusive opinion. She further argued that her impairment should not be apportioned because her preexisting back condition was not work-related and that LifePoint "took her as it found her."

The parties stipulated that Ms. Williams's compensation rate is $769.42 and that LifePoint advanced $15,498.72 in permanent partial disability benefits.

**Findings of Fact and Conclusions of Law**

Ms. Williams seeks permanent partial disability benefits. To prevail, she must prove by a preponderance of the evidence that her work injury resulted primarily out of and in the course and scope of her work and resulted in permanent impairment. *See* Tenn. Code Ann. § 50-6-239(c)(6) (2020); *Panzarella v. Amazon.com, Inc.*, No. E2017-01135-SC-R3-WC, 2018 Tenn. LEXIS 244, at *8 (Tenn. Workers' Comp. Panel May 16, 2018).

Since it is undisputed that Ms. Williams suffered a work injury and that she had a prior non-work-related surgery, this dispute involves the amount of permanent impairment, if any, that she retained from her work injury. The Appeals Board recently held that a trial

2

court cannot award permanent partial disability benefits for the portion of a rating that is attributable to a non-work-related condition. *Hart v. ThyssenKrupp Elevator Corp.*, 2020 TN Wrk. Comp. App. Bd. LEXIS 67, at *18-19 (Nov. 25, 2020). In that case, as here, the authorized physician completed a Form C-32 but then testified that the rating on the form included permanent impairment for a non-work-related condition.

As Dr. Lien is the authorized physician, his opinion about Ms. Williams's permanent impairment is presumed accurate and is rebuttable by "contrary evidence that satisfies a preponderance of the evidence standard." Tenn. Code Ann. § 50-6-204(k)(7).

Dr. Lien completed a C-30A Final Medical Report assigning Ms. Williams twelve-percent permanent impairment to the body as a whole. Ms. Williams argued that because the Workers' Compensation Law provides that impairment ratings must be recorded on a form adopted by the Bureau of Workers' Compensation, the Court must accept the twelve-percent rating. The Court disagrees.

While Tennessee Code Annotated subsections 50-6-204(k)(6)-(7) provide that the "written impairment rating" is presumed correct, this presumption may be rebutted. The Court finds Dr. Lien's testimony given after the written impairment rating is controlling no matter his written opinion before the deposition. Dr. Lien's testimony showed that Ms. Williams came to him for treatment of her work injury with either a preexisting seven-percent impairment (if her radicular symptoms had resolved after her prior surgery) or a preexisting twelve-percent impairment (if she had persistent radicular symptoms from her prior surgery until her work injury). However, if she had presented with a twelve-percent impairment, then this work injury caused "no additional impairment."

Based on this testimony, the extent of Ms. Williams's permanent impairment, if any, depends upon whether she experienced resolved or persistent radicular pain between her non-work-related surgery and her work injury. Ms. Williams testified credibly that the prior surgery resolved her radicular complaints. During testimony, she appeared calm, at-ease, self-assured, steady, confident, and forthcoming, all of which are indicia of credibility. *See Kelly v. Kelly*, S.W.3d 685, 694-5 (Tenn. 2014). Likewise, her husband testified credibly that he did not see signs she was still had pain other than muscle soreness between her prior surgery and her work injury.

Given this proof, the Court finds that Ms. Williams's radicular pain resolved after her non-work-related surgery and holds that she retained a five-percent whole-person impairment from this work injury. Thus, her original award is $17,311.95 (.05 times 450 weeks times $769.42) under Tennessee Code Annotated section 50-6-207(3)(A).

Ms. Williams also seeks increased permanent partial disability benefits under Tennessee Code Annotated section 50-6-207(3)(B). This provision states that if, at the end of the initial period of compensation, the employee has not returned to work for any

3

employer at an equal or greater rate of pay as before the injury, the employee qualifies for an increased benefit. Ms. Williams's initial period of compensation ended on March 1, 2019, twenty-two and a half weeks after Dr. Lien placed her at maximum medical improvement on September 25, 2018. *See* Tenn. Code Ann. § 50-6-207(3)(A). By Ms. Williams's unrefuted testimony, LifePoint could not accommodate her permanent restrictions, nor could she find employment elsewhere. Thus, her original award is multiplied by 1.35 under Tennessee Code Annotated section 50-6-207(3)(B), leaving a resulting award of $23,371.13.

However, the parties agreed that LifePoint advanced $15,498.72 in permanent partial disability benefits, which leaves $7,872.41 in permanent partial disability benefits still owed to Ms. Williams.

**IT IS, THEREFORE, ORDERED**:

1. LifePoint shall pay additional permanent partial disability benefits of $7,872.41.

2. LifePoint shall provide reasonable and necessary future medical benefits with Dr. Lien for Ms. Williams's work-related back injury.

3. Ms. Williams's attorney is entitled to a fee of $1,574.48, or twenty-percent of her recovery.

4. The Court taxes the $150.00 filing fee to LifePoint, to be paid to the Court Clerk under Tennessee Compilation Rules and Regulations 0800-02-21-.06 (August, 2019) within five business days of this order becoming final, and for which execution might issue if necessary.

5. LifePoint shall file a Statistical Data Form (SD-2) with the Court Clerk within five business days of the date this order becomes final.

6. Unless appealed, this order shall become final thirty days after entry.

**ENTERED January 19, 2021.**

_____
**Joshua Davis Baker, Judge**
**Court of Workers' Compensation Claims**

4

# APPENDIX

Technical Record:

1) Petition for Benefit Determination
2) Dispute Certification Notice
3) Request for Scheduling Hearing
4) Motion for Summary Judgment
5) Response to Motion for Summary Judgment
6) LifePoint's Reply to Ms. Williams's Response to Motion for Summary Judgment
7) LifePoint's Response to Ms. Williams's Additional Concise Statement of Material Facts Not in Dispute.
8) Order Denying Summary Judgment
9) Scheduling Order
10) Ms. Williams's Witness and Exhibit List
11) LifePoint's Witness and Exhibit List
12) Ms. Williams's Pretrial Brief
13) LifePoint's Pretrial Brief

Exhibits:

1) Dr. George Lien's deposition
2) Form C-30A, Final Medical Report
3) Form C-42, Choice of Physician

## CERTIFICATE OF SERVICE

I certify that a copy of this Order was sent as indicated on January 19, 2021.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|---|---|---|---|---|
| Joe Bednarz, Employee's Attorney | | | X | jbj@bednarzlaw.com |
| Cliff Wilson, Employer's Attorney | | | X | cwilson@howardtatelaw.com acolgate@howardtatelaw.com |

_____

**Penny Shrum, Court Clerk**
**Court of Workers' Compensation Claims**
Wc.courtclerk@tn.gov

6



<u>Compensation Hearing Order Right to Appeal</u>:

If you disagree with this Compensation Hearing Order, you may appeal to the Workers' Compensation Appeals Board or the Tennessee Supreme Court. To appeal to the Workers' Compensation Appeals Board, you must:

1. Complete the enclosed form entitled: "Notice of Appeal," and file the form with the Clerk of the Court of Workers' Compensation Claims *within thirty calendar days* of the date the compensation hearing order was filed. When filing the Notice of Appeal, you must serve a copy upon the opposing party (or attorney, if represented).

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing of the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the filing fee. You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of your appeal.**

3. You bear the responsibility of ensuring a complete record on appeal. You may request from the court clerk the audio recording of the hearing for a $25.00 fee. A licensed court reporter must prepare a transcript and file it with the court clerk *within fifteen calendar days* of the filing the Notice of Appeal. Alternatively, you may file a statement of the evidence prepared jointly by both parties *within fifteen calendar days* of the filing of the Notice of Appeal. The statement of the evidence must convey a complete and accurate account of the hearing. The Workers' Compensation Judge must approve the statement of the evidence before the record is submitted to the Appeals Board. If the Appeals Board is called upon to review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4. After the Workers' Compensation Judge approves the record and the court clerk transmits it to the Appeals Board, a docketing notice will be sent to the parties. The appealing party has *fifteen calendar days* after the date of that notice to submit a brief to the Appeals Board. *See the Practices and Procedures of the Workers' Compensation Appeals Board.*

**To appeal your case directly to the Tennessee Supreme Court, the Compensation Hearing Order must be final and you must comply with the Tennessee Rules of Appellate Procedure. If neither party timely files an appeal with the Appeals Board, the trial court's Order will become final by operation of law thirty calendar days after entry.** *See* **Tenn. Code Ann. § 50-6-239(c)(7).**

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



## NOTICE OF APPEAL

Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

Docket No.: _____

State File No.: _____

Date of Injury: _____

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____     ☐ Motion Order filed on _____

☐ Compensation Order filed on_____     ☐ Other Order filed on_____

issued by Judge _____.

### Statement of the Issues on Appeal

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

_____

### Parties

**Appellant(s)** (Requesting Party): _____ ☐ Employer ☐ Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐ Employer ☐ Employee
Appellee's Address: _____ Phone: _____
Email: _____
Attorney's Name: _____ BPR#: _____
Attorney's Email: _____ Phone: _____
Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

### CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a
true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described
in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this
case on this the _____ day of _____, 20 _____.


_____
*[Signature of appellant or attorney for appellant]*